UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MARK A. PETERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 04-40148-FDS |
| | ) | |
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY–LINCOLN LABORATORY and RESEARCH DEVELOPMENT AND TECHNICAL EMPLOYEES UNION, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**SAYLOR, J.**

Mark Peterson has brought suit against his employer, Massachusetts Institute of Technology–Lincoln Laboratory, and his union, the Research Development and Technical Employees Union, alleging unlawful discrimination on the basis of religion. The complaint alleges (as to both defendants) violations of the Massachusetts Fair Employment Practices Act, Mass. Gen. Laws ch. 151B, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and (as to the Union) breach of the duty of fair representation.

Currently pending before the Court is the Union's motion for summary judgment as to all counts. For the reasons set forth below, that motion will be granted with respect to Counts 1 and 2 and denied with respect to Count 3.

**I.   Background**

Mark Peterson has been employed as a machinist by MIT Lincoln Laboratory since July

20, 1982.  In that position, Peterson operates various equipment, including lathes, drills, and milling machines.  At all relevant times, Peterson has been a member of the Union.

According to Peterson, for the past fifteen years, his co-workers and supervisors at MIT Lincoln Laboratory have harassed him because of his Christian beliefs.  Peterson contends that Laboratory employees have assaulted him with a chemical, vandalized and stolen his property, tampered with the machines he was operating, and made verbal threats against him.  Most recently, in October 2003, a supervisor approached Peterson while he was operating a machine and instructed him to stop reading a book.  Peterson contends that it was common practice for other employees to read while work was running on a machine.  Nevertheless, Peterson was told that he should stare at his machine rather than read.

Peterson complained about the book incident to Roger Shields, a member of the executive board of the Union.  A week later, Peterson asked the Union to file a grievance on his behalf.  James Haskell, the head of the grievance committee, arranged a grievance meeting at which Peterson, Angelo Rodriguez (of the personnel department), and Charles Gendreau (a supervisor) were present.  Peterson was told that this was a "Step 2 Grievance" meeting.

After one or two weeks, Peterson asked Robert Patterson, the Union steward, about the status of his grievance.  A second meeting was held with Peterson, Haskell, Rodriguez, and Patterson.  However, neither the Union nor management took any further action concerning Peterson's complaint.

Thereafter, Peterson filed administrative complaints of religious discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC").  Peterson subsequently withdrew his complaint from the

2

MCAD and received a notice of right to sue from the EEOC.

## II.     Analysis

### A.     The Chapter 151B and Title VII Claims

The Union has moved for summary judgment as to Counts 1 and 2 on the grounds that Peterson failed to exhaust administrative remedies.[1]  Specifically, the Union contends that Peterson is barred from bringing his Chapter 151B and Title VII claims because he did not first file a complaint with the MCAD naming the Union as a respondent.

In support of its motion, the Union submitted the affidavit of Myrna Solod, clerk of the MCAD.  Solod's affidavit states that Peterson filed only one complaint with the MCAD, *Peterson v. M.I.T. Lincoln Lab*, MCAD Docket No. 03BEM02990.  That complaint, which is appended to Solod's affidavit, does not name the Union as a respondent or even allege any discriminatory conduct on the part of the Union.  It is limited exclusively to alleged discrimination by MIT Lincoln Laboratory.

The Union is correct that a plaintiff cannot maintain a Chapter 151B claim against any defendant not "named" in the administrative charge filed with the MCAD.  *See Butner v. Department of State Police*, 60 Mass. App. Ct. 461, 467-68 (2004) ("[A] complainant may not bring a civil action against defendants . . . without first complaining to the MCAD.").  The same exhaustion requirement exists as a prerequisite to maintaining an action asserting a violation of Title VII.  *See* 42 U.S.C. § 2000e-5(e)(1).

Peterson did not name the Union in his MCAD charge, and indeed he concedes that "he

---

[1] Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

has not met a condition precedent" to bringing the discrimination claims against the Union. Accordingly, the Court will grant summary judgment in favor of the Union with respect to Counts 1 and 2 of the complaint.

### B. The Claim for Breach of the Duty of Fair Representation

The Union has also moved for summary judgment as to Count 3 on the grounds that Peterson's complaint is untimely. Specifically, the Union contends that Peterson's claim is barred by the six-month limitations period set forth in § 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), because it was filed nine months after the October 2003 book incident. Peterson argues, however, that "a material fact remains unresolved" regarding the status of the grievance Peterson filed with the Union, and that therefore the cause of action did not accrue until some point in 2004, within the six-month period preceding the filing of the complaint.

As a preliminarily matter, even though the Union styled its motion as one for summary judgment, it has submitted no evidence that relates to Count 3. Instead, the Union has pointed exclusively to the allegations of the complaint. Similarly, Peterson has presented no evidence to demonstrate a dispute of material fact with respect to this claim, but simply relies on the allegations of the complaint.[2]

Under the circumstances, the Court will treat the Union's motion for summary judgment

---

[2] Local Rule 56.1 of the District of Massachusetts states in relevant part that "[m]otions for summary judgment shall include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation. Failure to include such a statement constitutes grounds for denial of the motion. Opposition to motions for summary judgment shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." Paragraphs 4-8 of the Union's L.R. 56.1 statement, which relate to the fair-representation claim, simply quote or paraphrase allegations of the complaint. Likewise, Peterson's L.R. 56.1 statement consists of a cross-reference to a photocopy of the relevant paragraphs of the complaint.

with respect to Count 3 as a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *See Schwartz v. Compagnie Gen. Transatl.*, 405 F.2d 270, 273 (2d Cir. 1968) ("Where appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment. A motion for summary judgment may be made solely on the pleadings, when it is so made it is functionally the same as a motion to dismiss or a motion for judgment on the pleadings.").

A court may not dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.*, 83 F. Supp. 2d 204, 208 (D. Mass. 2000), *aff'd*, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).

Peterson contends that the Union breached its duty of fair representation by participating in the alleged harassment and failing to pursue grievances on his behalf. However, because Peterson has not cited any statutory basis for relief in either his complaint or his memorandum, it is not clear what cause of action he intended to plead. In particular, it is not clear whether Peterson intended Count 3 to state solely a Title VII violation or whether he also intended to bring a fair-representation claim derived from the NLRA.[3]

---

[3] In its role as exclusive collective-bargaining representative, a union has a duty of fair representation, which includes, among other things, the duty to not discriminate. When a claim for breach of the duty of fair

5

The First Circuit confronted a similar situation in *Morales-Vallellanes v. Potter*, 339 F.3d 9 (1st Cir. 2003). There, the plaintiff sued his employer for retaliation and discrimination and also sued his union in the same action, claiming that the union breached its duty of fair representation by failing to submit and process his grievances against the employer. *Id.* at 11. The complaint explicitly alleged that the employer's conduct violated the collective bargaining agreement ("CBA") between the employer and the union, but cited no statutory basis for relief. *See id.* at 14.

Despite the deficient pleadings, the *Morales-Vallellanes* court broadly construed the allegations of the complaint as alleging a cause of action under both the CBA and Title VII. *Id.* at 15. The court first noted that plaintiff's failure to cite a statutory basis for relief was not fatal to his case under the liberal notice-pleading requirements of Fed. R. Civ. P. 8. *Id.* at 14. The court observed:

> A complaint need not point to the appropriate statute or law in order to raise a claim for relief under Rule 8. . . . [A] complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as relief is possible under any set of facts that could be established consistent with the allegations.

*Id.* (quoting *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992)). The court also found support for its conclusion in the "substance and structure" of the complaint. *Id.* at 15. Thus, the complaint was "replete with references to plaintiff's EEO initiatives, [and] . . . the retaliation and discrimination claims [were] set forth in a separate count to distinguish them from [plaintiff's] claims for violations of the CBA." *Id.* Therefore, the court determined that the

---

representation is predicated on discrimination prohibited by Title VII, a plaintiff can proceed under the NLRA, Title VII, or both. 1 Barbara Lindemann & Paul Grossman, *Employment Discrimination Law* ch. 22, at 878 (3d ed. 1996).

"more prudent course" was to construe the complaint as alleging both causes of action. *Id.*

This case presents the reverse of the situation in *Morales-Vallellanes*: Peterson plainly intends to state a Title VII claim against the Union, but it is less clear that he intends to assert rights under the NLRA. The Union apparently interprets Peterson's fair-representation claim as arising under the NLRA, because it has raised the six-month limitation period of § 10(b) as a defense to Peterson's claim. That relatively short statute of limitations does not, however, apply to a fair-representation claim brought under Title VII. *Lee v. ITT Standard*, 268 F. Supp. 2d 315, 335 (W.D.N.Y. 2002); *cf. Greenier v. PACE, Local No. 1188*, 201 F. Supp. 2d 172, 183 n.9 (D. Me. 2002) ("Because this type of duty of fair representation claim arises under the ADA . . ., Plaintiff is able to take advantage of the ADA's longer limitations period."). Furthermore, Peterson disputes that § 10(b) applies to Count 3.

The substance and structure of the complaint does not elucidate the matter. On the one hand, there are indications that Peterson did not intend to state a claim under the NLRA: Peterson does not cite the NLRA (or any other labor statute), never mentions the existence of a CBA, and does not allege that defendant breached a CBA.[4] On the other hand, Peterson did bring his fair-representation claim separately from his Title VII claim in Count 2, which seems to suggest that Count 3 was intended to state cause of action under a different statute.[5]

---

[4] Generally an NLRA-derived claim for breach of the duty of fair representation is brought as a "hybrid claim." This is a combination claim that the employer has breached § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), by violating a CBA and that the union has violated the duty of fair representation under the NLRA with regard to the employer's breach of contract. *See DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 163-65 (1983).

[5] This point is not dispositive, however. A union can violate Title VII without breaching the duty of fair representation. *See, e.g., Rainey v. Town of Warren*, 80 F. Supp. 2d 5, 17-18 (D.R.I. 2000) (describing the acquiescence theory of Title VII liability against a union, which does not require a breach of the duty of fair representation). Therefore, it is possible that Counts 2 and 3 simply assert different variations of Title VII claims.

Given the substantial ambiguity concerning Peterson's intentions and the policies underlying Rule 8 described in *Morales-Vallellanes*, the Court believes the proper course is to construe Count 3 of the complaint as pleading claims under both Title VII and the NLRA.

Accordingly, to the extent that Count 3 asserts a fair-representation claim under Title VII, it is barred for the reason stated above with respect to Counts 1 and 2: Peterson did not name the Union in his MCAD complaint, and thus he did not exhaust his administrative remedies.

To the extent that Count 3 asserts a claim under the NLRA, it is subject to the six-month limitations period set forth in § 10(b). *See DelCostello*, 462 U.S. at 154. Even so, the Court cannot dismiss Count 3 because it is not evident from the allegations of the complaint when the limitations period began to run.

When the six-month statute of limitations derived from § 10(b) applies, its "clock is activated by knowledge; it begins to tick when the challenged conduct comes to light." *Arriaga-Zayas v. International Ladies' Garment Workers' Union–P.R. Council*, 835 F.2d 11, 13 (1st Cir. 1987). Thus, the limitations period does not begin to run until "the plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing." *Id.* (quoting *Graham v. Bay State Gas Co.*, 779 F.2d 93, 94 (1st Cir. 1985)).

Here, there is nothing in the complaint to indicate when Peterson knew or should have known that the Union did not intend properly to pursue his grievances. The most recent act of discrimination that Peterson alleges occurred in October 2003. That same month, Peterson complained to the Union about the alleged discrimination, and the Union convened two grievance meetings, apparently over the course of several weeks. The complaint contains no information from which the Court can determine when Peterson acquired actual or constructive notice that the

Union did not intend to pursue his grievances. Accordingly, the Court is unable to conclude, on the basis of the complaint alone, that the limitations clock began to run more than six months before August 3, 2004, when Peterson filed his complaint.

### III. Conclusion

For the reasons stated above, the Union's motion for summary judgment with respect to Counts 1 and 2 of the complaint are GRANTED. The Union's motion for summary judgment with respect to Count 3, construed as a motion to dismiss, is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: April 18, 2005